*335
 
 Mr. Justice HUNT
 

 delivered the opinion of the court.
 

 The counsel for the appellee sustains the decree below dismissing the bill upon three grounds: 1st. Because the complainant failed to join the necessary parties defendant. 2d. Because a wife could not, at the date of the deed in question from Mrs. Beall, incumber her estate for the benefit of her husband. 3d. Because the complainant acted in bad faith.
 

 We will consider the different grounds in their order,
 

 1. As to the necessity of further parties defendant.
 

 Mrs. Beall was the owner of one-fourth of the property referred to, and no more. This one-fourth she could convey, and no more. Whether the terms of her deed purported to convey this portion only, or the whole, is not important. She could not convey the remaining three-fourths, nor could the general language of her deed create a cloud upon the title of her children. The record showed exactly what title she had, and exactly what title the children had. No relief was asked agaiust the children, and no claim made by the trustees that their rights were affected by the deed of their mother. The bill was filed against Mrs. Beall and her husband only, and judgment only asked against them. No judgment could be taken against the children or that would affeGt their estate, nor would a sale of their interest have any legal effect.
 
 *
 

 ' If the grantees were tenants in common, it is not denied that Mrs. Beall could convey her portion or interest without affecting the rights of her cotenauts, and that her deed in this case would effect that purpose. It is said, however, that as the law of Maryland stood in 1801, and was thence carried into the District of Columbia, the conveyance to Mrs. Beall and her children created a joint tenancy, and that being a joint tenant, her conveyance in 1857 did not bind her interest only, but affected, also, that of her cotenauts.
 

 
 *336
 
 We cannot recognize this conclusion. - We find the law on this point thus laid down, in Coke Littleton and in Bacon’s Abridgment:
 

 “If there be three joint tenants and one aliens his part, the other two are joint tenants of their parts that remain, and hold them in common with the alienee.”
 
 *
 

 “If one joint tenant bargains and sells his moiety, and dies before the deed is enrolled, yet the deed, being after-wards enrolled, shall work a severance
 
 ab initio,
 
 and support, by relation, the interest of the bargainee. But if one joiut tenant bargains and sells all the lands, and before enrollment the other dies, his part shall survive, for the freehold not being out of him the jointure remains, and though after-wards the deed is enrolled, yet only a moiety shall pass, for the enrollment by relation cannot make the grant of any better effect than it would have been if it had taken effect immediately.”
 
 †
 

 It is laid down in the same authorities that if one joint tenant agree to alien, but do not, and die, this will not sever the joint tenancy, nor bind the survivor. But it is held in
 
 Hinton
 
 v.
 
 Hinton,
 

 ‡
 

 that in equity it may be enforced if the articles amount to an equitable severance of the jointure.
 

 We thiuk it clear upon these authorities that the attempted conveyance by Mrs. Beall of the entire premises had no effect upon the interest of her eoteuants, conceding them to have been joint tenants. The law is well settled that no cloud is cast upon a title by a proceeding or claim, where the record through which title is to be made shows a defence to the elaim.
 
 §
 
 It would not be proper under such circumstances that the children should be parties defendants.
 
 ||
 

 
 *337
 
 "We dismiss, then, as unfounded the argument of a want of parties defendant.
 

 2. The dismissal of the bill is defended upon the further ground that the debt sought to be secured is the debt of the husband, and that it was not competent for the wife to iucumber her individual property to secure her husband’s debts.
 

 In support of this argument
 
 Steffy
 
 v.
 
 Steffy
 

 *
 

 in the Court of Appeals of Maryland, is cited; but that case does not bear upon the question. That was not the case of an attempt to incumber the separate property of the wife for the debt of the husband. It was a case in which both husband and wife had joined in an agreement to sell the lands of the wife. Upon a bill for specific performance the interest of the husband was adjudged to be bound, but the execution of a contract simply was held to be inoperative to convey the estate of or to bind the married woman under the statutes of Maryland.
 

 Nor is
 
 The Central Bank of Frederick
 
 v.
 
 Copeland,
 

 †
 

 in the same court, and also cited, an authority to the point insisted upon. It was there held that a mortgage by a wife for her husband’s debts, obtained from her by threats, and the exercise by the husband of an authority so excessive as to subjugate her will, was not binding upon her.
 

 There is nothing in these authorities to indicate that the law of Maryland or of the District of Columbia on this subject is in any respect peculiar. The case rests upon and must be governed by the general principles applicable to the subject.
 

 As to a wife’s individual property generally, it is well settled that she may, by joining in a deed with her husband, convey any interest she has in real estate. Such a deed conveys the interest of both.
 
 ‡
 

 The doctrine that a. married woman has the power to charge her separate estate with the payment of her husband’s
 
 *338
 
 debts, or any other debt contracted by her as principal or as surety, has been uniformly sustained for a long period of time.
 
 *
 

 The question has been in respect to the manner in which the conceded power should be exercised, and in resp.ect to the requisite evidence of its due execution. Whether the simple execution of an obligation by a married woman operates to charge her estate, or whether she must declare such to be her intention ; whether an oral statement of such intention is sufficient, or whether it must be in writing; whether such intention must be manifested in the contract itself or may be separately manifested; whether a declaration of an intention to bind her separate property is sufficient, or whether the property intended to be charged must be specifically described, have been the subject of discussion at different times. But that a married woman, by an instrument in writing by which she expressly charges her separate property for the payment of a debt, which charge is contained in the instrument creating the debt, and where the property is specifically described, and which instrument is executed in the manner required by law, may create a valid charge upon such property, is agreed in all the books.
 

 The instrument before us contains all these requisites, and we cannot doubt its validity. Whether the property is her separate estate or her individual property merely, the result is the same.
 

 3. It was farther contended that the bad faith of the complainant should bar his recovery.
 

 The defendants in a cross-bill allege .fraud in the original sale to Mr. Beall, in that the complainant deceived and defrauded them by promising to execute a deed of the Magruder- property, as soon as they made the purchase, and
 
 *339
 
 by misrepresentations of the value of the land. This is denied by the complainant in his answer to the cross-bill. It will be remembered also that the order of sale expressly prohibited the giving a deed until the whole purchase-money should be paid. Fraud is alleged again.iu that the purchase by Crowley at the resale was for the benefit of Stephen, the complainant, upon an agreement that the property should be transferred to him, and that the same had been conveyed to him. All fraud is denied in the answer. The alleged agreement or understanding between Crowley aud the complainant Stephen is denied in all its parts. It is admitted by Stephen that subsequently, without any previous understanding, and in good faith, and for a fair price paid, the complainant purchased of Crowley the property bought by him at the resale. The interval between the purchase by Crowley at the resale and the purchase from him by the complainant does uot appear. Crowley’s purchase was made in May, 1859. In February, 1872, thirteen years -having elapsed, it is alleged and admitted that a conveyance had been made by Crowley to the complainant. On the principle that evei'y pleader states his case as favorably to him as he is able to do, we may assume that this time had mostly elapsed before the purchase was made by the complainant. No proofs were taken. The case was heard on bill and answer. It narrows itself down to this: there being no understanding or agreement between the purchaser at a public sale, and the trustee making the sale, there being no collusion between them, there being no fraud in fact, the duties of the trustee in respect to the sale being ended, and his doings confirmed by the court having the subject in charge, does the circumstance that years afterwards the trustee bought the property from the purchaser in good faith, and for a fair price paid to him, vitiate and annul the public sale to the purchaser?
 

 If there was a fraud on the part of the complainant in making the sale, at which Crowley was the purchaser, it arose from an act, an intention, or an omission then done or existing. A subsequent purchase may afford evidence
 
 *340
 
 that the original sale was made to permit that purchase, and that the end illustrates what the parties all the while intended. But to make a fraudulent sale it is necessary to go back to the acts, the intents, or the neglects existing at the time of the sale. It would seem to be a self-evident proposition that when it is'conceded that a sale was in .fact fair, honest, and just when made, that no unlawful act or intent then existed, that a fraudulent intent or an unjust dealing as to that time Could not be imputed to the party from subsequent occurrences. It stands upon pleadings here that at the time of the sale the complainant had no understanding that he should ever have any interest in the property; in other words, Crowley bought it for himself and for his own exelfc&ive benefit. There was no collusion, that is, the property was fairly sold and for all that could be obtained for it. The sale was reported to and confirmed by the court. This constituted a discharge of the duty of the trustee in making the sale. It is quite difficult to conceive that any subsequent facts (leaving these in full force) can establish that such a sale is fraudulent.
 

 It is a general rule that a trustee cannot deal with the subject of his trust. If one acting as trustee for others becomes himself interested in the purchase, the
 
 eestuis que trust
 
 are entitled, of course, to have the sale set aside, unless the trustee had fairly divested himself of the character of trustee, and the fact that the purchase was made through the intervention of a third person makes no difference.
 
 *
 

 We should be unwilling to weaken the obligation of good faith and fidelity required by the law of a trustee. We have frequently enforced such obligations in the most rigid manner. It would, however, be a great straining of a good principle to hold that a purchase by a trustee from the purchaser at a public sale, under the circumstances before us, is necessarily fraudulent.
 

 There is a class of cases undoubtedly in which transfers
 
 *341
 
 of property are adjudged to be fraudulent, although there be no actual fraud meditated by the parties. Such are the cases of an assignment by an insolvent debtor reserving portions of the assigned property for his own benefit, requiring releases from creditors as a condition of participating in the fund, and the like.
 

 The ease we are considering bears no resemblance to these cases. There is in a purchase by a trustee, nothing that of itself and necessarily vitiates the original sale. Whether culpable or commendable depends upon the circumstances of each case. It may be wrong, and it may be right. It may be approved by the parties interested and affirmed. It may be condemned by them and avoided. When it is found that the transaction is itself perfectly fair and honest, that the purchase was not contemplated at the original sale, but was first thought of years afterwards, and was then made for a full and fair consideration actually paid by the trustee, and after the fiduciary duty was at án end, we find no authority to justify us in pronouncing the original sale to have been fraudulent.
 

 Upon the whole ease the decree must be reversed, and the record remanded, with directions to enter a decree in conformity with this opinion, with leave to the parties to amend their pleadings if they shall be so advised.
 

 Reversal and remand accordingly.
 

 *
 

 Ward
 
 v.
 
 Dewey, 16 New York, 519; Heywood
 
 v.
 
 City of Buffalo, 14 Id. 534; Cox
 
 v.
 
 Clift, 2 Comstock, 118; Story’s Equity, § 700.
 

 *
 

 Coke Littleton, 189; Bacon’s Abridgment, title “Joint Tenants,” E.
 

 †
 

 Coke Littleton, 186, 186a; Bacon’s Abridgment, title “Joint Tenant,” I, 3.
 

 ‡
 

 2 Vesey, 634.
 

 §
 

 Ward v. Dewey, 16 New York, 519; Heywood
 
 v.
 
 City of Buffalo, 14 Id. 634; Cox v. Clift, 2 Comstock, 118; Story’s Equity,
 
 §
 
 700.
 

 ||
 

 See Heed
 
 v.
 
 Vanderheyden, 5 Cowen, 719; Bailey v. Inglee, 2 Paige, 278
 

 *
 

 19 Maryland, 5.
 

 †
 

 18 Id. 305.
 

 ‡
 

 1 Washburn on Heal Property, *280.
 

 *
 

 Hulme
 
 v.
 
 Tenant, 1 Brown’s Chancery Cases, 16; Standford
 
 v.
 
 Marshall, 2 Atkyns, 69; Bullpin
 
 v.
 
 Clarke, 17 Vesey, 365 ; Jaques
 
 v.
 
 Methodist Episcopal Church, 17 Johnson, 548; Yale
 
 v.
 
 Eederer, 22 New York, 450; Same Case, 18 Id. 276; Corn Exchange Insurance Co.
 
 v.
 
 Babcock, 42 Id. 615; Story’s Equity, § 1396, 1401a.
 

 *
 

 Jewett
 
 v.
 
 Miller, 10 New York, 402; Slade
 
 v.
 
 Van Vechten, 11 Paige, 21; Van Epps
 
 v.
 
 Van Epps, 9 Id. 237; Bank of Orleans
 
 v.
 
 Torrey, 7 Hill, 260; Hawley
 
 v.
 
 Cramer, 4 Cowen, 717; Hill on Trustees, *536,
 
 h.