Mr. Justice Wylie
delivered the opinion of the court:
In 1852, Frances I. Chapman, a young lady, was owner of certain property about Georgetown, D. C., in her own right. In contemplation of marriage with the defendant, Dodge, she made a deed conveying all her property to her expected husband, as trustee for her sole and separate use. The marriage took place ; children were born ; but the husband being insolvent, failed to support them. Knowlés, the plaintiff, was a grocer, and furnished supplies from time to time for the support of the family. The husband would make these purchases as agent, or, as he called himself, the trustee of his wife, and in that' capacity he signed a number of notes in settlement of bills which had been contracted. All these supplies were for the use of the family. They were all charged by Knowles against Mrs. Dodge. They were not furnished on the credit of the husband, for he had none; he was notoriously insolvent, with no prospect of ever being solvent. The family would have perished, or. at least been obliged to separate if some person had not furnished them supplies. They were indispensable, and there was no way to obtain them except upon the wife’s credit. The wife was aware that Knowles was furnishing and supplying the family. She assented to the purchases, and the proof is that she intended to execute a formal instrument making these claims a charge upon her separate property. But her health was declining, and she died before it was done. And now this is a bill in equity brought by Knowles against the parties claiming the property through an appointment which was made by Mrs. Dodge to secure payment of the debt out of the separate estate, and the question to be determined by the court is whether the separate estate is liable under the circumstances. In order to ascertain this we must look at the deed of settlement, as by that we are to be controlled in all cases of this kind. This deed after giving the names of the parties, declares : [Here his honor read the deed, the material parts of which are given in 'the statement of the case.] Here then we have an estate, real and personal, con *71 ■veyed by a wife before her marriage and in contemplation ■of marriage, to her husband, as trustee, to allow her to receive the rents and profits during her life, and conferring upon her the power of appointing by will the disposal of the remainder of the estate after the life estate should terminate. There were provisions as to new investments, and as to what was to be done in case'she failed to make an appointment or make a will, but it is not worth while to examine them, for the reason thatthei’e were no investments made, and because ■she made her will and made her appointment.
The first question presenting itself in the case is, what is the efiect of the execution by a tenant for life, under these ■circumstances, of an instrument in the nature of a last will and testament making appointment under a power? It was in her option to execute the power conferred upon her by the settlement, or not to execute it. If she had failed to make the appointment, then subsequent provisions in the •settlement as to the distribution of the property would take effect. But what effect does the execution of her power of .appointment, have? Does it subject that property to the payment of her debts or not ? Iler life estate is at an end, of course. Under the instrument of settlement she had the power of appointment, and she has exercised it in favor of her children.
Assuming that Knowles has a valid claim against the wife, ■do the children take this property subject to her debts ? Or ■do they take it discharged of such obligation ? Now, if Mrs. Dodge had failed to execute the power of appointment, there ■would have been no doubt about it. The creditor would have lost his claim, because that would have been an indication that she had elected to claim for herself nothing more than a life estate. But having availed herself of that power, the •question is whether it does not bring the whole estate ■under obligations, and we thiuk it does.
There are many authorities upon this subject, but I shall read merely from Williams on Executors, vol. 2, page 1522, i(5th Am. ed.), where they can all be found, and they fully sustain the doctrine there enunciated:
*72 “Where a man has a general power of appointment over a fund, and actually exercises this power, whether by deed or will, the property appointed shall form part of his assets,, so as to be subject to the demands of his creditors at his death,, in preference to the claims of his legatees or appointees.”
The execution of the power of apointment changes what would otherwise have been nothing but a life estate into an estate of inheritance, and renders it subject to the debts of the appointor. This then was an estate of inheritance, and the devisees under the will are to be postponed to the claims, of the creditors.
The only remaining question is, whether the. facts in this case establish the validity of the claim of Knowdes.
There are, I may say, thousands of authorities in the books, in regard to the power a married woman has to make a charge-upon her separate estate. There is no doubt now that she-has the power to make such a charge by a properly-executed instrument, and some of the courts say that that is the.only way to do it. The court of appeals of Kentucky, in Burch v. Breckenridge, 16 B. Monroe, 384, has taken-that ground,, that she undoubtedly has the power to charge her estate with the debts of her husband, or with the necessaries furnished to the family; but that, as it is a charge upon her estate, it must be by some instrument in writing. We think, however, that is not now the prevailing doctrine.
In England the doctrine which has obtained, after a long struggle, is laid down by Lord Brougham in Murray v. Barlee, 3 My. & K., 209, followed by Owens v. Dickenson, 1 Cr. & Ph., 53, and Master v. Fuller, 4 Bro. C. C., 19.
In that case the Lord Chancellor, after reviewing all the-cases, expresses his opinion thus:
. “In all these cases I take the foundation of the doctrine to-be this: The wife has a separate estate, subject to her own control, and exempt from all other interference. If she cannot affect it, no one can ; and the very object of the settlement ■which vests it in her exclusively, is to enable her to deal with it as if she were discovert. The power to affect it. being unquestionable, the only doubt that can arise is, whether *73 or not she has validly encumbered it. At first, the court seems to have supposed that nothing could touch it but some real charge, as a mortgage, or an instrument amounting to an execution of a power, where that view was supported by the nature of the settlement. But afterwards her intention was more regarded, and the court only required to be satisfied that she intended to deal with her separate property. When she appeared to have done so, the court held her to have 'charged it, and made the trustees answer the demand thus created against it. A good deal of the nicety that attends the doctrine of powers thus came to be imported into this consideration of the subject. If the wife did any act directly charging the separate estate no doubt could exist; just as an instrument expressing to be in execution of a power was always of course considered as made in execution of it. But so, if by any reference to the estate, it could be gathered that such was her intent, the same conclusion followed. Thus, if she only executed a bond, or made a note, or accepted a bill, because those acts would have been nugatory if done by a feme covert without any reference to her separate estate, it was held in the cases I have above cited, that she must be intended to have designed a charge on that estate, since in no other way could the instrument thus made by her have any validity or operation; in the same manner as an instrument which can mean nothing if it means not to execute a power, has been held to be made in execution of that power,, though no direct reference is made to the power. Such is the principle, and it goes the full length of the present case. But doubts have been in one or two instances expressed as to the effect of any dealing whereby a general engagement only is raised. That is, where she becomes indebted without executing any written instrument at all. This point was discussed in Greatly vs. Noble, 3 Madd., 79;, and the Master of the Rolls (Sir John Leach) appears in the subsequent case of Stuart vs. Kirkwall, 8 Madd., 387, to have been of opinion that the wife’s separate estate was not liable without a charge, and to have supposed that he had before stated that opinion in Greatley vs. Noble, though he by no *74 means expressed himself- so strongly in disposing of that case, and distinctly abstained from deciding the point. I own I can perceive no reason for drawing any such distinction. If in respect of her separate estate the wife is in equity taken as a feme sole, and can charge it by instruments absolutely void at law, can there be any reason for holding that her liability, or, more properly, her power of affecting the separate estate, shall only be exercised by a written instrument ? Are we entitled to invent a rule, to add a new chapter to the Statute of Frauds, and to require writing where that act requires none ? Is there any equity reaching written' dealings with the property, which extends not- also to dealing in other ways, as by sale and delivery of goods ? Shall necessary supplies for her maintenance not touch the estate, and yet money furnished to squander away at piny be a charge on it if fortified by a scrap of wilting ? No such •distinction can be taken upon any conceivable principle. But one of the earlier cases, Kange vs. Delavall, 1 Vern., 326, makes no mention of such a distinction, for there being indebted generally is all that is stated as grounding the claim; and in Lillio vs. Airey, 1 Vesey, jr., 227, the party who had furnished necessary supplies to the wife, was held entitled to recover to the extent of her separate maintenance. She had, it is true, given a bond, but only for ¿£60; the court, however, held the creditor entitled to a larger sum, the separate maintenance exceeding the amount of the bond.”
In the leading case of Hulme vs. Tenant, 1 Bro. C. C., 16, to which all the other cases refer, decided by Lord Thurlow, lie held that the wife’s estate should be liable for a debt of the husband which she had promised to pay; but that the execution should not reach beyond her rents and profits in the hands of the trustee. But that case is different from this. There there was a power of appointment in the deed of settlement, to be sure, but the woman was alive. The •deed of settlement was for the rents and profits for her sole and separate use during her natural life, as in this case, and, non constat, she had never exercised the power to appoint, and the relief, therefore, so far as to be effectual under the *75 decree, must be confined to the rents and profits in the hands of the trustee during her life. But this is a different oase.
In tbe seventh edition of Lord St. Leonaz-d’s work on <c Powers,” his lordship observes, without referring to Murray vs. Bai-lee, or Owens vs. Dickenson, “ that the prevailing opinion then was, that her separate estate was not liable to genei-al demands upon her. Considering, however, the opinions I have referred to, and the reason of the thing, I think it very probable that when that question ai-ises for decision, it will be decided in the affirmative.” Per Sir R. T. Kindersley, V. C., in Vaughan vs. Vanderstegen, 2 Drew., 183.
It is only consistent with all the analogies on the subject, that, if a wife upon whom a separate estate for her own use has been settled, allows her husband to receive the rents and profits, she will be bound by it without making any assignment or transfer to him. Pie takes them and takes them for the support of the family, or for himself, or other uses, and that is taken.as an appropriation in that way.
In this ease Mrs. Dodge’s death has taken place. I read again from this work :
“ After the death of a feme covert having separate property, creditors may file a bill for payment of their debts (Owens vs. Dickenson, 1 Cr. & P. H., 48; Gregory vs. Lockyer, 6 Madd., 90); and her specialty debts, as debts by bond, will not have priority over her simple contract debts, but must both be paid, pari passu. Anon., 18 Ves., 258; Owens vs. Dickenson, 1 Cr. & P. H., 53. In other i-espects, if she has' left a will, her estate will be administered according to the oz-dinary rules in creditor’s suits. Owens vs. Dickenson, 1 Cr. & P. H., 53; Norton vs. Turvill, 2 P. Wms., 144. The separate estate of a married woman is liable for a breach of trust by her.”
I think that this point has been determined also in the case of Jacques vs. The Methodist Episcopal Church, the most famous case that has ever arisen in this country in regard to these interesting questions. It was decided in the first instance by Chazzcellor Kent. .An appeal was taken *76 to the Court of Errors in New York, and the decision was reversed. The opinion of the Court of Errors was pronounced by Chief Justice Spencer, whose name amongst lawyers is almost of equal authority with that of the great chancellor himself. Without enumerating the facts in this case, I wil? read one paragraph from the opinion of the chief justice in 17th Johnson’s Reports, 580:
“ It necessarily results from the power which I suppose Mrs. Jacques to have had over her property, that she might give it away without any formal act, in the same manner as-, though she had been sole; and her agreement that the family expenses were to be borne out of her estate, especially when executed by her, was a valid act. She was well situated as regards property, while her husband was in quite moderate-circumstances. She chose, after marriage, to maintain her former equipage, and the husband acquiesced in her wishes.. It "would be extremely hard and unjust to throw upon him the charge of her establishment, when it is clear that she meant to defray the expense of it herself. My opinion, accordingly, is, that the agreement is valid, and that the husband is not only not to be charged with any sums of money expended for the maintenance of the family, but that he is to be allowed for all advances for that object; and also for money advanced for necessary reparations to her estate.”
There were charges that were made against her, and they were large charges, for which she had executed no instrument, at all to bind her separate estate. Whatever we may think individually of this great controversy between Chancellor Kent, on the one side, and the Court of Errors in New York, on the other, the doctrine which was announced by the Court of Errors has prevailed in New York, and, with some exceptions, I think, throughout this country generally. And the Supreme Court of the United States, in Stephens vs. Beall, 22 Wall., 337, a case which went up from this court, has gone very far in the direction previously marked out by the Court of Errors in New York. They have refused to follow the doctrine laid down by Chancellor Kent.
The doctrine maintained now in New York, and generally *77 in this country, and the doctrine which has been recognized and enforced by the Supreme Court of the United States in Stephens vs. Beall, is this: That where an estate is settled upon a married woman for her own sole and separate use she is the only person to dispose of that estate. Her husband •cannot do anything with it. The object of that settlement is to bind his hands with fetters, and to leave her free as a Jeme sole. She can do with her separate estate whatever she chooses, unless by the deed of settlement her hands are bound. But so far as her hands are unbound, she is at liberty to act as a feme sole, or any other person. And even when this deed of settlement requires that her charge upon the estate shall be made by deed, she may make the change by will and by reversion.' If the title is complete in her, she can charge and encumber it with everything which she is not forbidden. If she can charge the estate in that way, she may contract debts in regard to the estate. Then it becomes a question of fact to be determined-by every court, in each case, according to its circumstances, to whom the credit was given. If the credit was given to the married woman and she assented to it, if the purchases were made and the goods supplied to her, good faith requires that her •estate shall answer for it. It would be a fraud on her part to allow her to repudiate a debt which she herself had contracted in this way, for the maintenance of her otherwise helpless family and herself. And we think that, in reaching this conclusion, we have not gone beyond the authorities which now prevail generally in regard to this question. These views lead us inevitably to a reversal of the decree below.