## PARKER v. SINCLAIR.

Circuit Court of Appeals, Second Circuit.
April 16, 1928.

No. 222.

1. Tenancy in common ⬤▭43—Where there is no unity of title, one tenant in common may sell interest without reference to cotenants.

Where there is no unity of title between tenants in common, one tenant may sell his interest without reference to any other tenant, and such sale does not affect interest of such cotenant.

2. Deeds ⬤▭8—Quitclaim deed, releasing interest of grantor in certain lands to government, did not pass interest of cotenant.

Quitclaim deed to government, filed by oil company in making application for lease, which deed relinquished to government all of grantor's rights, title, and interest claimed or possessed in or to any and all of lands in instrument described, did not pass, and did not assume to pass, interest of any other cotenant.

3. Trusts ⬤▭95—Defendant, acquiring outstanding claims and executing quitclaim deed to government, which leased oil lands to him, held not trustee for plaintiff for his interest, which he claimed defendant did not acquire (Oil Leasing Act Feb. 25, 1920, § 18 [30 USCA 227]; Naval Appropriation Act June 4, 1920 [41 Stat. 812]).

Where defendant, pursuant to Oil Leasing Act Feb. 25, 1920, § 18 (30 USCA 227), and Naval Appropriation Act June 4, 1920 (41 Stat. 812), to meet government's requirements, acquired outstanding claims against land, and by quitclaim deed relinquished all rights in lands to government, and secured oil lease from government, and organized corporation which took title to lease, and lease was later declared void, one who had acquired an undivided one-seventh interest in oil placer location claims in land, which he claimed defendant did not acquire, held not entitled to have defendant declared trustee of shares of stock issued in exchange for plaintiff's interest in lease.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by H. Leslie Parker against Harry F. Sinclair, to have the defendant decreed to be a trustee of certain property. Decree dismissing the bill of complaint; plaintiff appeals. Affirmed.

Chadbourne, Stanchfield & Levy, of New York City, Long, Chamberlain & Nyce, of Washington, D. C., and Dudley W. Strickland, of Denver, Colo. (William Wallace, Jr., of New York City, of counsel), for appellant.

Martin W. Littleton and G. T. Stanford, both of New York City (Edward H. Chandler, of Tulsa, Okl., and R. W. Ragland, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUS-TUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This appeal comes here from an order dismissing a second amended bill of complaint filed seeking to have the appellee declared a trustee to the extent of a one-seventh interest in the lease of oil lands located in Natrona county, Wyo., for the use and benefit of appellant. The lands are included in the Naval Petroleum Reserve No. 3, called the Teapot Dome.

On May 28, 1890, a group of ten persons located and became co-owners of 29 different unpatented oil placer locations amounting to several thousand acres of land in this naval reserve. One of the locators, Dorsett, ultimately became the owner of an undivided one-seventh interest in these claims, and this is the interest through which the appellant makes the claim herein. All of the locators deeded their claims to one of their number, Shannon, in trust with a power of sale for the benefit of all. This is referred to as the first Shannon trust. Under it, the trustee caused the claims to be represented, and made affidavit of representation, for various years, that work was done for the benefit of the owners. Dorsett died intestate in 1907 and in 1920 his heirs at law for a consideration of "$75,000 in cash and other valuable considerations" granted their interest to one Wheeler, who in turn granted the same to this appellant. In October, 1904, one Lobell concededly succeeded to the other seven-eighths interest, but it is claimed that the Dorsett interest was not conveyed to him. In April, 1905, Belgo succeeded to Lobell's interest and spent much money on the claims and caused affidavits of representation thereof to be filed. In August, 1920, Belgo sold to Pioneer, and in the same month Pioneer applied for oil leases under the Oil Leasing Act. In 1922, the appellee bought the interest of Pioneer and Belgo.

Pursuant to the Oil Leasing Act of February 25, 1920 (41 Stat. 437, 443 [30 USCA § 227]), and the Naval Appropriation Act of June 4, 1920 (41 Stat. 812), the appellee, to meet the government's requirements, agreed that he would obtain and surrender to it all outstanding claims against the land and he secured a lease from the government to the lands in question. Belgo and Pioneer, pursuant to the direction of the appellee, deeded all their interest to the Mammoth Oil Company, the stock of which was alleged to be held by the appellee.

In October, 1895, a second trust deed was made to Shannon for the benefit of the then owners. It referred to the first trust deed and recited that the interest of four, among whom was Dorsett, was subsequently granted and transferred to the others of the parties named as cestui que trustent in said deed, so that the parties to the present indenture and the sole owners of the said property were the signators of the instrument, and that the signators to the second trust deed were the sole owners of the property. It gave broad powers to the trustee including the power to sell. On October 10, 1904, Shannon, as trustee, deeded the lease to Lobell. The second trust deed, in addition to the signature of the Penn Oil & Gas Company, was signed by "Philip M. Shannon, as Trustee." Shannon also signed as attorney for the grantors and individually. This deed conveyed all interest in the described lease, also any and all other mining claims owned by the grantors in Natrona and Johnson counties in the state of Wyoming, and specifically conveyed all of the described oil placer mining claims in which Dorsett had an interest. The Mammoth Oil Corporation after incorporation by appellee, having taken title to the lease, had its stock placed on the New York Stock Exchange, and it was sold as high as $58 per share.

In Mammoth Oil Co. v. United States, 275 U. S. 13, 48 S. Ct. 1, 72 L. Ed. ——, the lease assumed by the appellee was voided on the ground of fraud and misrepresentation in its procurement. But the theory of the appellant's right of recovery is that the title to the one-seventh interest in the lease was never lawfully conveyed by Shannon as trustee, and that it remains in the appellant through the conveyances referred to; that, the appellee having procured a lease from the government in the manner described and having organized the Mammoth Oil Company and thereafter either sold or had opportunity to sell the stock thereof, even though the government lease was later declared null and void, he became a trustee for the appellant to the extent of a one-seventh interest in the property in question; further, that from May, 1890, Shannon held the legal title to the Dorsett interest as trustee of an expressed trust; that he was a grantor of Belgo, from whom the appellee secured most of the interest he had, and, as trustee of the Dorsett interest, Shannon was charged with the duty of protecting their interest; that Belgo, Pioneer, and the appellee had knowledge of these two trusts or were chargeable with knowledge; further that, in 1922, the lease represented an asserted claim which, whether void or voidable, valuable or worth-

less, might have been and was the subject of transfer and barter; that shares in the Mammoth Company were issued for it, and that they could have been made the subject of a valid expressed trust, and therefore equally so, a constructive or implied trust. United States v. Dunn, 268 U. S. 121, 45 S. Ct. 451, 69 L. Ed. 876. If the appellant and his predecessors in title had an undivided interest in the placer mining locations at the time that the Mammoth Company obtained quitclaim deeds from Belgo and Pioneer of their interest in such locations, and in turn quitclaimed such interest to the government, still the Mammoth Company did not deal with or assume to deal with the appellant's interest in any way. The averments of the complaint to that effect are but conclusions, and are denied by the deeds and written instruments which the appellant attaches to its amended bill. Nowhere is it alleged that the Mammoth Company ever acquired or had any interest in the placer mining locations except such as were acquired from Belgo and Pioneer. The deeds from Belgo to Pioneer were a quitclaim, not of all interest, as in the case of the deed from Shannon to Lobell dated October 12, 1904, but recite "of all the right, title, and interest claimed or held by it in the locations." The Pioneer deed is the same. If the appellant or his predecessor had any interest in the location, neither Belgo nor Pioneer assumed to convey such interest in their deeds to the Mammoth Company. The agreement pursuant to which the deeds were delivered indicates that Belgo and Pioneer and the Mammoth Company purported to deal only with the interests of Belgo and Pioneer in the locations. The Mammoth Company, in its application for a lease, recites that it "tenders and files a quitclaim executed by it, quitclaiming and relinquishing to the government of the United States all of its rights, title, and interest claimed or possessed in or to any and all of the lands in the instrument described." And the deed from the Mammoth Company to the United States is a quitclaim of "all the right, title, and interest claimed or held\by it."

[1] It is clear that, where there is no unity of title between the tenants in common, one tenant may sell his interest without reference to any other cotenant. Such a sale does not affect the interest of such cotenant. Bissell v. Foss, 114 U. S. 252, 5 S. Ct. 851, 29 L. Ed. 126; Stephen v. Beall, 22 Wall. 329, 22 L. Ed. 786; Camp Mfg. Co. v. Jordan (D. C.) 292 F. 182. If at the time the government leased the lands to the Mammoth Company, the appellant's assignor had any interest in the lands covered by the lease, he was a cotenant with the government and not with the Mammoth Company. Whether the government had a right to make a lease of all the lands rather than six-sevenths undivided interest therein, we need not consider.

The appellant affirms the lease for the purpose of this suit. Affirming the lease, he must look to the landlord for his proportionate share of the royalties accruing under the lease, and, if he disaffirms the lease, he must seek to enforce his interest in the placer mining locations in an appropriate way. There is no allegation in the bill which alleges that either the appellee or the Mammoth Company received a lease in exchange for the placer mining locations or an interest therein which it released to the government. And such an averment, if made, would be negatived by the terms of the lease executed by the government to the Mammoth Company. The Act of June 4, 1920, under which the Mammoth Company lease was made, did not provide for leases upon the basis of placer mining claims and extended no preferential consideration to the holders of such claims. While the Secretary of the Navy could not, under the act, lease lands covered by applications to patent or lease, while such applications were pending, such lands as he was authorized to lease he could lease to anybody offering the best terms.

[2] The allegations of the bill that the appellee had offered to quiet for the United States all claims and title outstanding against the lands in the Naval Reserve, so as to enable the United States to make a contract which would be free from controversy, and that, because the Secretary of the Interior had advised the appellee that any outstanding claims must be so clear and reinvested in or relinquished to the United States before it would or could make such a contract with any one, and that by tendering the quitclaim deed of the Mammoth Company to the Secretary of the Interior this appellee represented that he had and held and was relinquishing all such claims, and that the action of the United States in making the lease was induced by such representations of the appellee, resulting in the leasehold to the Mammoth Company, is without force. Assuming that such representation was necessary to enable the appellee to obtain a lease, and there was necessity for relinquishment and quitclaim, the quitclaim deed contains no representations as to what it covered. It is a mere relinquishment or release to the United States of whatever interest the Mammoth Company had in the lands described. It was

not effectual to pass the interest of any other cotenant, and it did not assume to do so. A deed or grant so delivered is not a representation that it constituted a relinquishment of all claims of whatever nature, wherever asserted, and by whomsoever asserted.

Under the Act of June 4, 1920, Congress did not attempt to protect a claimant who had not made his placer location the basis for an application for patent under the Placer Mining Law or for a lease under the Act of February 25, 1920, and the reason therefor is explained by the fact that the lands of the Naval Petroleum Reserve had been withdrawn from entry under the Placer Mining Laws since September 27, 1909, and claims not made the basis of an application for patent or lease were considered by Congress as abandoned.

The proposal contained in the letter of February 3, 1922, of the appellee to quiet title for the United States was on its face solely for the benefit of the government. It undertook "to quiet all outstanding claimants' titles," and the purpose was expressed in that proposal so as to enable the government to make a contract free from controversy. The appellant was in no way named therein, and he received no benefit or rights therein.

Appellant's claim rests solely upon the theory that the first Shannon trust had never been terminated, and that the deed of October 10, 1904, from Shannon to Lobell was ineffective to pass Dorsett's interest. There was no community of interest, for the relationship was one of open hostility rather than of mutual confidence and trust. The Mammoth Company did not go into possession of this property by virtue of the placer mining claims. It never held them by reason thereof. It relinquished them to the government the very day after it acquired them. Moreover, there was never any confidential relation between the appellant or his predecessor in the Mammoth Company, and the deeds from Belgo and the Pioneer to the Mammoth Company were executed and delivered March 10, 1922, and the deed from the Mammoth Company to the United States was dated March 11, 1922. The lease to the Mammoth Company was executed April 7, 1922.

In Hodgson v. Federal Oil & Development Co., 274 U. S. 15, 47 S. Ct. 502, 71 L. Ed. 901, complainant sought a decree establishing his right to a one-eighth interest in the lease of the defendant granted by the United States under the Act of February 25, 1920. It appeared that in 1887, McManus and seven associates located a placer mining claim and thereafter perfected the same. He died in 1901, and his one-eighth interest descended to his heirs and had never been lost, but the heirs had been unaware of the claim for some twenty years. The company, having become part owner of the claim, took possession thereof, asserting title to the whole, surrendered it, and procured the existing lease. The bill asserted that the company became a cotenant with the McManus heirs and consequently the lease obtained inured to their benefit. The bill was dismissed, the court referring to section 18 of the statute (30 USCA § 227) which in part reads: "All leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear." The court found that the complainant did not come within that part of the section, saying:

"But we think it is clear enough that he does not claim 'through or under' either appellee, within the meaning of the act. Whatever rights he has, if any, come through or under George McManus and his heirs."

With respect to the contention of the cotenants, the court said:

"The rule as commonly stated forbids a cotenant from acquiring and asserting an adverse title against his companions because of the mutual trust and confidence supposed to exist; but the rule does not go beyond the reason which supports it. If the interests of the cotenants accrue at different times, under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his cotenancy to secure an advantage, may acquire and assert a superior outstanding title, especially where there is no joint possession."

The appellant seeks to distinguish this case by asserting that the appellee obtained title from appellant's trustee in such manner as to be put upon, if not actual, at least constructive notice of appellant's claim, and that the constructive trust here claimed is in the stock of the company and not in the land or lease. It is not of importance that a trust is asserted in a lease in the Hodgson Case, whereas here it is in the shares of stock in exchange for the lease. If there were actual notice in the instant case, the question arises, since the lease was annulled and since it is the sole asset of the Mammoth Company, given in exchange for all its capital stock—has the appellee obtained anything upon which the appellant can assert a constructive trust? Since the lease was void, it follows

that the Mammoth Company got nothing by the lease. The appellant's claim, if any would make him a cotenant with the government, particularly under the appellee's quitclaim to the United States. See, also, Sullivan v. Mammoth Oil Co. (C. C. A.) 22 F. (2d) 663. Neither case may be distinguished upon the claim that this suit is against the appellee personally, and that consequently, by ratifying his cause, appellant makes him a constructive trustee. In this way it is attempted to ratify the acts of the appellee and his necessary application to the government; otherwise no constructive trust can be worked out. The validity of his claim, as the claim of any other locator, must be passed upon, not by the courts, but by the Secretary of the Interior. In Anicker v. Gunsburg, 246 U. S. 110, 118, 38 S. Ct. 228, 229 (62 L. Ed. 603) referred to by the Supreme Court in the Hodgson Case, the statute dealing with the Indian land was under consideration, and it provided:

"All leases * * * shall be in writing and subject to approval by the Secretary of the Interior and shall be absolutely void and of no effect without such approval." 34 Stat. 145, § 20.

The court said that the Secretary of the Interior was given power to test the validity of claims to leases and—

"In order to maintain a suit of this sort the complainant must establish not only that the action of the Secretary was wrong in approving the other lease, but that the complainant was himself entitled to an approval of his lease, and that it was refused to him because of an erroneous ruling of law by the Secretary."

The statute here under consideration specifically required an application to the Secretary, and it is not claimed that the appellant in any way made such application. Ratification of the acts of the appellee would not amount to such application if title remained in the appellant. Indeed, ratification, if the theory of the appellant be correct, would be that of an illegal transaction. Such a result could not be overcome by the claim that the trust is in the shares of stock and not in the lease. The claim in the shares of stock arises only by virtue of the ratification of the illegal lease which was the consideration for the issuance of the shares of the corporation.

[3] In United States v. Dunn, 268 U. S. 121, 45 S. Ct. 451, 69 L. Ed. 876, referred to by the appellant, the United States for a minor Indian, brought suit to set aside a lease of the minor's land by his guardian or to impress the stock of the corporation to which the lease was assigned with a trust. It appeared that the guardian under a secret arrangement was to receive some of the shares of stock of the corporation by executing the lease. The court held that the minor, since the lease was fraudulent, could set it aside, or, if he preferred, reach the shares or the proceeds thereof in the hands of fraudulent lessees and their donees. The case at bar is different. The distinction here is that Pioneer and Belgo did not purport to convey to Mammoth all the interest of Shannon, trustee, or of his grantee Lobell, but only conveyed all the right, title, and interest of Pioneer and Belgo. There could therefore be no issue of stock against any interest of Dorsett which did not pass by the conveyance of Shannon to Lobell. If and in so far as Pioneer and Belgo did not take title to this interest, it never passed or purported to pass by the quitclaim deeds of right, title, and interest. If it did really pass, the interest of Dorsett was cut off by Shannon's deed. If it did not pass, the interest of Dorsett was unaffected, and the stock was not issued against it. In either event the suit was properly dismissed because the bill on its face failed to set forth any right to equitable relief.

Decree affirmed.