HULDAH ELLEN COBB, in equity,

*vs.*

CHARLES L. KNIGHT AND WIFE.

Cumberland. Opinion December 27, 1882.

*Trusts. Trustees.*

A widow set apart a portion of a sum of money received from insurance on her husband's life, in trust for her infant daughter, to be paid her on reaching her majority, and loaned the same, the notes and mortgages running to herself as trustee for the benefit of the daughter. With a portion of the fund she afterwards purchased land, the deed running to herself as trustee for the benefit of her daughter. The real estate so conveyed was by her procurement conveyed to her second husband (through a third person) without consideration on the part of the husband, he having full knowledge of the trust. Upon a bill in equity, brought by the daughter after arriving at full age, to compel her mother and step-father to convey the land, *Held;*

1. That the mother was trustee for her child.

2. That a trust of personal property is not within the statute of frauds, and may be created by parol.

3. That the trust was not revocable by the trustee.

4 That a trustee of personal property cannot rightfully change the same into real estate, but when so changed the *cestui que trust* may follow the substituted property, and such property will be subject to the trust origin-

ally created in the hands of a grantee without consideration and with notice of the trust.

5. That the complainant is entitled to a conveyance.

ON BILL IN EQUITY.

Heard on bill, answer and proof.

The material facts are stated in the opinion.

*John C. Cobb*, for the plaintiff.

*Clifford and Clifford*, for the defendants.

APPLETON, C. J.   This is a bill in equity by the complainant, to enforce a trust in her favor, and to compel a conveyance to her of real estate conveyed to the female defendant in trust for her benefit, and through her (said defendant's) agency and procurement, conveyed to her husband without consideration and with a full knowledge of the trust on his part.

The evidence is very voluminous, but the following facts must be deemed as fully established.

Reuben G. Brackett, the father of Mrs. Cobb and the husband of Mrs. Knight (who married her co-defendant in 1853 or 1854), died on the twenty-fourth day of March, 1846.   The complainant, their only child, was born May 6, 1843, and was married to her present husband January 1, 1862, so that she has ever been and still is under such disability as may arise either from infancy or coverture.

Mr. Brackett at his death owned a farm, (the homestead,) worth twenty-five hundred dollars, but subject to a mortgage of six hundred dollars, and another lot (Back Cove), subsequently sold for six hundred dollars, and farming utensils and other personal property of not great value.   He had likewise effected an insurance of five thousand dollars on his life, payable in case of his decease to his wife, and in case of her decease to her children. The policy was procured in part, for the purpose of paying his debts, and was in his possession and under his control.   That his debts were to be paid out of the sum received was well understood by his wife and received her assent.

Samuel Brackett was appointed administrator on the estate of his deceased brother.   No guardian was appointed for Huldah

Ellen, his infant daughter. After consultation between the widow and the administrator, it was arranged that two thousand dollars should be reserved from the insurance fund and held in trust by the widow for her daughter till she should become of age, — that it should then be paid her without interest, the mother meanwhile having the interest and boarding and taking care of the daughter without charge, which was done. The mortgage on the homestead was paid from the insurance money, and the farm mortgaged was then conveyed by the administrator to the widow.

Shortly after this arrangement and undoubtedly in pursuance of it, the parties, the administrator and the widow, met on June 9, 1846, at the office of John Neal, through whose agency the policy of insurance had been effected, and then and there two thousand dollars were paid and placed in trust for the complainant. John Neal gave his note for fourteen hundred dollars, payable to Orilla L. Brackett as trustee, for the benefit of Huldah Ellen Brackett, payable in five years. He secured this note by his mortgage of the same date, in which he recites that "in consideration of the sum of fourteen hundred dollars, paid by Orilla L. Brackett, of Westbrook, Maine, widow, as trustee for the benefit of Huldah Ellen Brackett, infant daughter of said Orilla, by her late husband Reuben G. Brackett," he does hereby give, grant, bargain, sell and convey "unto the said Orilla, for the sole and exclusive use of the said Huldah Ellen Brackett," a certain tract of land, describing it, to have and to hold to the "said Orilla, her successors, assigns to her and their use forever as trustee, or trustees as aforesaid," &c. "provided nevertheless if the said Neal shall pay to said Orilla, trustee as aforesaid, her successors, his note of fourteen hundred dollars," &c. "then both to be void, otherwise to remain in full force."

On the same day James N. Winslow gave a note similar in *its* terms, for six hundred dollars, running to Orilla L. Brackett, trustee, &c. The mortgage by which this is secured, recites the consideration to be "the sum of six hundred dollars paid by John Neal of Portland, agent for Orilla L. Brackett, of Westbrook, Maine, trustee of Huldah Ellen Brackett, infant daughter of said

Orilla, and her late husband Reuben G. Brackett." The mortgaged premises were conveyed to "said Orilla L. Brackett, trustee as aforesaid, her successors and assigns, to the use of said Huldah Ellen, forever, &c. These mortgages are for the sum held in trust, and are both discharged on the record by the mortgagee, Orilla L. Brackett.

The first named mortgage was discharged May 7, 1851, on which day John Neal gave a new note to Mrs. Brackett, and a mortgage to her, "in consideration of four hundred and fifty dollars paid by her, as trustee for Huldah Ellen Brackett, infant daughter of the late Reuben G. Brackett," conveying the mortgaged premises to "said Orilla L. Brackett, her successors, forever, nevertheless in trust, to the sole use and behoof of the said infant, Huldah Ellen."

About the time of the marriage of this complainant, Mrs. Brackett, (now Knight,) gave her daughter the last named note of Neal, and the note of J. N. Winslow on which was due about three hundred dollars, which is all the respondent alleges her daughter has received. The balance received from the insurance (except what together with the proceeds of the Cove lot — six hundred dollars,— went to pay the debts of the estate), and the homestead farm went into the hands of the defendant, Orilla L. Brackett, (now Knight,) by a deed from the administrator of her first husband.

The defendant, Mrs. Knight, denies the existence of any trust, and says that she was not aware that the notes and mortgages were running to her as trustee for her daughter, but the inferences necessarily to be inferred from her conduct, her admissions, her evasions, as well as from the notes, the deed, and the mortgages to which she was a party, and from the testimony of Samuel Brackett, the administrator, and others, leave no doubt that her statements and denials are not entitled to credence. Indeed, she would seem to be estopped by the notes and mortgages to which she was a party, to sit up her present claim.

No formality is required to create a trust. It may be proved by letters, memoranda, recitals in a bond, or by any writing which shows the fiduciary relations between the parties. 1 Perry

on Trusts, § 82. But here the trust relates only to the personalty — the money or the notes. The mortgages were only for security. But where the trust is of personal property, it is not within the statute of frauds and may be created by parol. *Benbow* v. *Townsend*, 1 Mylne and Keene, 506. In *Jones* v. *Lock*, 1 L. R. Ch. Appeal Cases, 25, Lord CRANWORTH says that " a parol declaration of trust of personalty may be perfectly valid even when voluntary. If," he adds, "I give any chattel, that, of course, passes by delivery, and if I say, expressly or impliedly, that I constitute myself a trustee of personalty, that is a trust executed and capable of being enforced without consideration. I do not think it necessary to go into any of the authorities cited before me ; they all turn upon the question, whether what has been said was a declaration of trust or an imperfect gift. . .
But when there has been a declaration of trust, then it will be enforced, whether there has been consideration or not."

But upon the facts established here was a trust on ample consideration. Beside the love of a mother for a child, the pecuniary consideration was sufficient. The complainant was sole heir to her father. She was entitled to the homestead subject to the mortgage and dower, and to the Cove sold for six hundred dollars. By the arrangement between the administrator and the mother, the latter obtained the title to the homestead, which was sold by her for twenty-five hundred dollars, and the price of the Cove lot enured to her benefit by reducing the amount required to pay the debts of the estate.

Here, then, has been a trust created. It was a trust with full consideration. But if voluntary, having been perfectly created, it will be enforced, if the relation of trustee and *cestui que trust* has been once established. 1 Perry on Trusts, § 104.

It has been shown that here a legal trust, of personal property, enforceable in equity, has been created, which is not revocable.

The trustee holding the notes of Neal, took from him as she admits, six hundred dollars, with which she redeemed a levy made on the land of her father, taking a deed of the premises levied upon, dated September 14, 1847, from Daniel Winslow

to herself, "in trust for and to the use of Huldah Ellen Brackett, infant child of the said Orilla by the late Reuben G. Brackett," to hold "in trust as aforesaid."

The trust being of personal property, the trustee had no right to change it into real estate. But, the purchase of the real estate being, by the admission of the trustee, with funds derived from the Neal note running to her as trustee, it is to be regarded as virtually a purchase with the funds of the *cestui que trust.* In such case, the *cestui que trust* may follow the substituted property as long as it can be traced. Lewin on Trusts, 206, 753. The property substituted will be held subject to the trusts as originally created.

The fact that the trustee, having purchased the levy, gave a bond of the same to her father, who died shortly after, and who never paid a dollar towards the redemption of the levy, affords no answer to the complainant's claim. The bond, if there was one, is not produced. If it were, beside the limitation of over thirty years or more, it would not avail against the complainant. Even if its conditions had been performed, (which they were not,) and a deed had been given, the grantee would have taken it with a full knowledge of the trust patent upon record.

The title to the land in controversy thus being in the hands of the trustee, she, on the sixth day of July, 1863, conveyed to Robert Leighton, whom she regarded as a brother, for the consideration of twenty-nine hundred dollars, the homestead place and the premises in dispute, taking therefor two notes, — one for twenty-five hundred dollars as the price of the former, and four hundred as that of the latter. The small note was paid by a conveyance of the land in controversy by the procurement of Mrs. Knight to her husband, which these defendants have ever since occupied.

The bill charges that Charles L. Knight paid nothing for this conveyance to him. This is not denied by the answers, nor by Mrs. Knight in her deposition. The husband does not give his deposition. The consideration for the conveyance to him was the note running to his wife, so that he must be regarded as holding the estate without having paid any consideration there-

for, and in trust as did his wife, from whom as trustee the consideration was had. That he is chargeable, too, with notice of the trust, will hardly be denied.

The personal estate was converted into real estate. The original trust attached to the real estate in the hands of the trustee. The real estate was fraudulently and collusively conveyed to evade the trust. It was transferred by the act of the trustee to her husband, who holds with a full knowledge of the trust and is a purchaser without consideration. The trust as first created still remains, and the *cestui que trust* is entitled to the full enforcement of her rights.

It is urged that there has been no demand upon the trustee previous to the institution of this bill. But a demand can hardly be deemed necessary upon a trustee, who has wrongfully transferred the trust estate, nor upon one holding a title acquired without consideration, and with a full knowledge of the trust and for the purpose of aiding the trustee in defrauding the *cestui que trust* of her legal rights. But if a demand is required, the evidence, we think, shows one to have been made.

The statute of limitations is no bar between trustee and *cestui que trust.* Perry on Trusts, § § 863, 864. There must be an open and express denial of the trust by the *cestui que trust,* and what amounts to adverse possession. Hill on Trustees, 264.

The conclusion is, that the complainant, Huldah Ellen Cobb, is entitled to a conveyance of the premises deeded by Daniel Winslow, on September 14, 1846, to the defendant, Orilla L. Knight, (then Brackett,) in trust for this complainant, and that the defendants be decreed to convey the same to her by a deed of warranty against all persons claiming title under them or either of them ; and that they be decreed to pay the rents and profits of said real estate, deducting therefrom taxes paid and any legal charges in the care of the same, from May 6, 1864, when this complainant became of age, and that a master be appointed to ascertain and report the amount due ; and that the complainant recover costs.

BARROWS, DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.