UNITED STATES *v.* DUNN ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 120. · Argued March 13, 1925.—Decided April 13, 1925.

1. Parties who take a lease of a ward's property under a secret agreement with the guardian making the lease that it shall inure in part to his personal benefit, hold the lease, and if that be transferred to a purchaser, hold the proceeds they acquire from it, as trustees *ex maleficio* for the ward without regard to whether the ward was actually damaged by the fraud of the guardian. P. 130.

2. In such cases, the ward may, at his option, follow the fraudulently diverted trust *res* until it reaches the hands of a *bona fide* purchaser for value, or claim the proceeds of the sale or other disposition of it in the hands of the person who fraudulently acquired it from the fiduciary and in the hands of that person's donees. P. 132.

3. A suit to establish an equitable claim to specific property may be prosecuted to subject the proceeds of that property to the trust, if it develop in the course of the trial that the defendant has conveyed it away in violation of his equitable duty to the plaintiff. P. 133.

4. The guardian of an Indian leased his ward's land partly in consideration of a secret interest for himself agreed to by his lessees; and afterwards, in a compromise between the lessees and one who had obtained a lease of the same land from the Indian's curator, the guardian's lease was executed by the curator also and, having been approved by a County Court and by the Secretary of the Interior, was assigned to a corporation, shares of which were issued to the respective lessees and parties claiming under them, the assignment of the lease being the sole consideration for the shares distributed to the lessees of the guardian. *Held,* (a) that a suit by the United States on behalf of

the Indian, to set the lease aside or for alternative relief, could be prosecuted to reach the shares, or the proceeds thereof, in the hands of the fraudulent lessees and their donees, including shares bought by these lessees from the guardian, even though relief could not be had as against the corporation and *bona fide* purchasers for value; and (*b*) that an agreement by the plaintiff after defeat in the District Court, not to prosecute the appeal as against the corporation and *bona fide* shareholders, did not prevent this relief as against the others. P. 135.

5. In a suit praying relief from the execution and legal effects of a lease because it was procured by the fraud of the lessees, the lessees can not, while claiming under it and holding the benefits derived from it, deny the authority of the lessor to make it. P. 135.

6. One who claims the benefit derived from a breach of trust in which he actively participated and who shows no prejudice from a delay of six years in bringing suit to compel him to account, can not complain of laches. P. 136.

288 Fed. 158, reversed in part; affirmed in part.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which dismissed a bill brought by the United States, on behalf of a full-blooded Choctaw Indian, a minor, to cancel for fraud an oil and gas lease on the Indian's land in Oklahoma, or, in the alternative, to affix a trust on shares held by defendants in a corporation, also a defendant, to which the lease had been assigned.

*Messrs. Walter A. Ledbetter* and *W. W. Dyar,* Special Assistants to the Attorney General, for the United States. The *Solicitor General* was on the briefs.

*Messrs. George S. Ramsay* and *William G. Davisson,* for appellees. *Messrs. William B. Johnson, Hugh W. McGill, Edgar A. de Meules,* and *Villard Martin* were on the briefs.

Eaves was the duly appointed, qualified, legal and acting curator or guardian of the estate, and as such was the only person empowered by law to execute an oil lease

on the land in question. Two separate and distinct guardianships or curatorships cannot exist at the same time for one and the same person. Eaves was not only *de jure* curator, because he actually occupied the office and exercised the authorities of a curator. The lease executed by Eaves, curator, to Mullen, under the order and confirmation of the County Court of Love County, was valid and binding subject to the approval of the Secretary of the Interior—that is to say, it was as valid and binding as possible to make under the law, the Secretary's approval being necessary to its final confirmation.

The execution of a lease on the same land to Dunn and Gillam by a pseudo guardian, no matter how fraudulently obtained, created no actionable wrong in favor of the ward against the lessees under such lease, in the absence of evidence that the ward suffered some injury thereby. Dunn and Gillam, occupying no fiduciary relationship to the ward, and having obtained nothing by virtue of the Thomas lease, cannot be held to be trustees of any property or rights or interest acquired by them in the Mullen lease from Eaves by virtue of having used the Thomas lease as a means of coercing Mullen into a compromise agreement whereby they obtained from Mullen, and not from the ward, an interest in the lease. The fact that Eaves joined in the Thomas lease instead of Thomas joining in the Eaves lease in no way alters the legal rights or status of the parties, it clearly appearing that the lease involved in this case never acquired any validity from its execution by Thomas, as guardian, and therefore, insofar as the rights of the parties are involved, we should treat the lease as having been executed solely by Eaves, as curator.

It was immaterial to the Department and to the parties whether Thomas joined in the Eaves lease to Mullen or Eaves joined in the Thomas lease to Dunn and Gillam,

that being a mere formality, it being the intention of all parties that if the Thomas lease was good Mullen should have an interest therein and if the Eaves lease was good, then Dunn and Gillam should have an interest in that lease.

Two things must concur to constitute actionable fraud—inequitable conduct and injury. In other words, fraud and damage must concur before a court of equity will grant any relief against a judicial sale. The lease required court approval and partakes of the nature of a judicial sale. Story's Eq. Juris., 14th ed. Vol. 1, §§ 289 and 290; *Bigby* v. *Powell,* 25 Ga. 244; *Rock, etc., Ry. Co.,* v. *Wells,* 61 Ark. 354, 54 Am. St. Rep. 216; *Shultz* v. *Shultz,* 36 Ind. 323; *Hartford Fire Ins. Co.,* v. *Meyer,* 30 Neb. 135; *Mass. Benefit Life Ass'n.* v. *Lohmiller,* 74 Fed. 23; *Ableman* v. *Roth,* 12 Wis. 81; *Hockaday* v. *Jones,* 56 Pac. 1054; *Wilson* v. *Shipman,* 34 Neb. 573. There must not only be fraud, but there must be damage or injury. In other words, it must be shown that it would be inequitable and unjust for the judgment to be enforced, *Felt* v. *Bell,* 10 Am. & Eng. Dec. in Equity, 35.

Defendants are not estopped to deny the authority of Thomas to act as guardian. Injury is a necessary element of a valid estoppel, and neither the appellant nor its ward is injured by showing that Thomas had no authority, nor is the lessee injured.

The appellant was guardian of the full blooded Indian, and had full power to compromise this case, especially with the approval of the Court of Appeals, which was given. *Tiger* v. *West'n Inv. Co.* 221 U. S. 286; *United States* v. *Kagama,* 118 U. S. 375–384; *Heckman* v. *United States,* 224 U. S. 444. The appellant, being vested with complete authority to institute the suit and control the litigation, has the concomitant power to compromise the case. *Thompson* v. *Maxwell Land Grant & Ry. Co.,* 168 U. S. 451.

Upon the discovery of the alleged fraud, the United States had one of two remedies: A suit in equity for rescission, cancellation and accounting, in which it would be necessary to offer to do equity by restoring to defendants the consideration paid, etc.; or an action for damages to recover the value of the lease at the time it was fraudulently obtained. Black, Rescission & Cancellation (2d ed.), 561.

The plaintiff can not have both of these remedies, and was required to elect which remedy it would pursue, and, having elected to pursue the remedy in equity for rescission, it is bound thereby, *Shappirio* v. *Goldberg,* 192 U. S. 232. It can not have a judgment for damages or for the stock of any particular stockholder, *Wilson* v. *New United States Cattle Ranch,* 73 Fed. 994; *Shappirio* v. *Goldberg, supra; Supreme Council, etc.,* v. *Lippincott,* 134 Fed. 284.

The appellant, with or without the written consent of some of the parties, can not change its action in the Court of Appeals so as to ask for another and different relief against some of the parties not joining in the compromise.

The lease, being an entirety, can not be split up by various suits to cancel against various interested defendants. While an injured party may sue one or all the joint tort-feasors for damages, there can be only one suit to cancel a lease, and the compromise and settlement of the suit is an affirmance and ratification of the lease as an entirety and terminates the cause of action against everyone. I Story, Eq. Juris., (14th ed.,) Vol. 1, § 291. If with knowledge of the fraud the party exacts performance or performs himself he condones the fraud, *McLean* v. *Clapp,* 141 U. S. 429; *Grymes* v. *Sanders,* 93 U. S. 55; *Burk* v. *Johnson,* 146 Fed. 209; *Kingman* v. *Stoddard,* 85 Fed. 740; *Simon* v. *Goodyear Metallic Rubber Shoe Co.* 105 Fed. 574.

It appears from the evidence that the compromise was a collusive arrangement between the Bull Head Oil Com-

pany and certain of its stockholders whereby certain stockholders, with the consent and approval of appellant, received preferential advantages out of the funds and assets of the corporation in which appellees, Dunn and wife, also stockholders, were not allowed to participate.

The Government, by entering into the compromise contract whereby the corporate funds were to be used for the special benefit of a part of the stockholders to the exclusion of other stockholders, made itself a party to the fraud and cannot, with good grace, further prosecute this action at law or otherwise. The Government does not come into this court with clean hands. See *State of Iowa* v. *Carr*, 191 Fed. 257–266; *United States* v. *Walker*, 139 Fed. 409.

If the compromise with the Bull Head Oil Company did not enure to the benefit of Dunn and Gillam as stockholders, the measure of any recovery against Dunn and Gillam is the value of the lease at the time it was executed on August 18, 1913; and, full value having been paid to the Indian Superintendent and received by the Indian, there is nothing to recover in this suit. *Burnes* v. *Burnes*, 137 Fed. 800.

Mr. Justice Stone delivered the opinion of the Court.

This is an appeal from the United States Circuit Court of Appeals for the Eighth Circuit from so much of its decree as affirms a decree of the District Court of the United States for the Eastern District of Oklahoma dismissing the bill of the plaintiff—the appellant here. 288 Fed. 158.

Suit was begun to cancel an oil and gas lease of forty acres of land, given to appellees, Dunn and Gillam, by Thomas, guardian, and signed by Eaves, curator, of Allie Daney, a minor, full-blood Choctaw Indian. Both Thomas and Eaves claimed the right to represent the minor and to lease her land. Eaves was appointed cura-

tor of the minor by the United States Court for the South-
ern District of the Indian Territory in November, 1905,
and, on admission of the Territory of Oklahoma and the
Indian Territory to statehood as the State of Oklahoma,
that court transmitted the curatorship record to the
County Court of Love County. Thomas was appointed
guardian by the County Court of LeFlore County in July,
1911. On August 18, 1913, Eaves executed a lease of the
premises in question to one Mullen, which lease was ap-
proved by the County Court of Love County. On the
same day, Thomas, as guardian, executed a lease of the
same premises to Dunn and Gillam, which lease was ap-
proved by the County Court of LeFlore County. The
two leases came to the Indian Superintendent for his rec-
ommendation for approval by the Secretary of the Interior
at about the same time. This developed a controversy
between Mullen on the one hand and Dunn and Gillam
on the other as to whether Thomas or Eaves properly
represented the minor and had legal authority to enter
into a lease of the minor's lands. A compromise was
finally effected between the contesting parties whereby
Eaves added his signature as curator to the lease which
had been given by Thomas to Dunn and Gillam and ac-
knowledged it. At the same time the Bull Head Oil Com-
pany, a corporation and one of the defendants, was organ-
ized. The Thomas lease was assigned to it under an
agreement that the lessees would take for their respective
interests in the leasehold, equal shares of stock. The
capital of the Bull Head Oil Company was fixed at
$18,000, of which 8,000 shares of the capital stock of the
Company, having a par value of $8,000, were issued to
Mullen, the lessee under the Eaves lease, and 8,000 shares
were issued to Dunn, as trustee, for account of the lessees
under the Thomas lease and those claiming under them.
The remainder of the capital stock was reserved and is-
sued for other corporate purposes.

The bill of complaint joined as defendants the Bull Head Oil Company, Dunn and Gillam and their wives and Mullen and others who were stockholders of the Company. It charged that the Thomas lease was voidable because, as alleged, Thomas, the guardian, had been induced to execute the lease by a secret agreement with Dunn and Gillam to the effect that a one-fourth interest in the lease was to be transferred by them to a third person for the personal benefit of Thomas. The bill prayed that the minor, Allie Daney, be decreed to be the owner in fee of the lands described in the Thomas lease; that the defendants be adjudged to have no interest therein and that they be required to account for the oil and gas taken from the land and for the money received by them as the proceeds of the oil and gas so taken and, in the alternative, if for any reason the court should adjudge that the lease of the premises could not be cancelled, then that the defendant stockholders be adjudged the holders of said stock respectively in trust for the minor, and that the plaintiff be awarded the custody thereof for her use and benefit and that the defendants who are or at any time have been stockholders of the Bull Head Oil Company be required to account for all money received by them respectively either as dividends or as proceeds of sale of their stock.

On trial the court found that a part of the consideration moving Thomas, as guardian, to execute the lease to Dunn and Gillam was a one-fourth interest in the lease transferred by them pursuant to a secret agreement with the guardian to a third person for the personal use and benefit of Thomas. The trial court further found that Eaves, as curator, by subscribing his name to the Thomas lease, with the approval of the County Court of Love County and with the approval of the Secretary of the Interior, gave legal validity to that lease; that such action of Eaves was free from the legal effect of the fraud of

Thomas and of Dunn and Gillam, and that by the transfer of the lease to the Bull Head Oil Company in exchange for its issue of capital stock, the full legal ownership of the lease was thereupon vested in the Bull Head Oil Company free from any legal effect of the fraud in the execution of the original lease by Thomas, the guardian. The court also found that of the shares of stock acquired by Gillam as a result of the compromise entered into with Dunn and Gillam by Mullen, 3,266⅔ shares, of which his wife Mrs. Gillam, a party defendant, held 1,266⅔ shares, were sold by them to one Hamon, a party defendant, for the sum of $75,000 and that Hamon was an innocent purchaser for value of the stock; that the defendant T. H. Dunn still retained his holdings in the stock of the Company. There was also a finding that certain shares of the Dunn and Gillam stock transferred by them respectively to Mrs. Dunn and Mrs. Gillam, were so transferred without consideration. Upon the basis of these findings the court entered its decree in favor of the defendants and dismissed the case.

After the entry of the decree of the District Court the plaintiff, acting by the Secretary of the Interior, entered into an agreement, approved by the Secretary and an Assistant Attorney General, with all the defendants other than the defendants Dunn and his wife and the defendants Gillam and his wife, whereby it was stipulated that, in any appeal which the United States should take from the decision of the District Court in this cause, " the United States would neither ask nor insist upon a reversal of the said cause, or a recovery against the Bull Head Oil Company or against any of the defendants in said cause, save and except T. H. Dunn, N. E. Dunn [wife of T. H. Dunn], J. Robert Gillam and Mrs. J. Robert Gillam and that it will not insist upon any judgment impressing a Trust upon any of the stock in the

55627°—25——9

Bull Head Oil Company heretofore owned by J. Robert Gillam or Mrs. J. Robert Gillam and assigned to Jake Hamon, but will insist upon a money judgment against them for whatever amount the testimony may show should be awarded."

Both the District Court and the Circuit Court of Appeals found, and the appellees do not question the correctness of the finding, that the Thomas lease to Dunn and Gillam was procured by fraud; nor can it be questioned on this record that the claim of Dunn and Gillam to rights under the Thomas lease was the only basis and consideration moving from them for the compromise agreement by them with Mullen, claiming under the Eaves lease, which resulted in Dunn and Gillam together receiving in exchange for their interest in the lease, 8,000 shares of the capital stock of the Bull Head Oil Company as the fruits of their fraudulent enterprise. Of this stock Dunn and his wife still hold a substantial amount. Gillam and his wife have converted the stock held by them into cash by sale of it to an innocent purchaser, and the leasehold itself, by the action of Dunn and Gillam, has been transferred to the Bull Head Oil Company and has been adjudged by the decree of the District Court to be beyond the reach of the plaintiff and the plaintiff's ward, and the plaintiff in error has abandoned its appeal from that part of the decree.

There is thus presented the narrow question whether the appellees, Dunn and wife and Gillam and wife, against whom this appeal is now prosecuted, may retain the fruits of this fraudulent course of conduct, immune from attack in a court of equity. The court below rested its decision on the ground that the compromise settlement entered into with the defendants, some of whom were stockholders of the Bull Head Oil Company, other than the appellees against whom this appeal is prosecuted, had the effect of confirming the Thomas lease and,

if the appellant had the right to continue the litigation against Dunn and Gillam, that right is based on their alleged fraudulent conduct and is a claim for damages on account of the fraud, and since there was no evidence that the lease was granted for an inadequate return, there was no basis for an award of legal damages to the appellant.

Undoubtedly in an action at law for fraud or deceit, since the action sounds in damage, the plaintiff must prove damage to establish a right to recover. If Dunn and Gillam had retained the lease which they fraudulently obtained from Thomas, as guardian, the plaintiff could, at its option, either have brought suit in equity against them for the cancellation of the lease, or for damages against the guardian, or possibly also at law for damages against Dunn and Gillam, and on familiar principles any relinquishment of plaintiff's right to cancel the lease would necessarily have limited plaintiff to a right of recovery for damages. But such is not the situation here presented. The grant of the lease by Thomas, the guardian, to Dunn and Gillam with a secret agreement that the guardian should be jointly interested in the lease with Dunn and Gillam, was a fraud upon the ward, rendering the whole transaction voidable at the option of the ward or those legally representing her. It is not necessary in such a situation in order to establish the right to relief to show that the beneficiary was damaged by the fraudulent conduct of the trustee. It is sufficient to establish that the fiduciary has exercised his power of disposition for his own benefit without more. *Michoud et al.* v. *Girod et al.*, 4 How. 503, 533; *Wardell* v. *Railway Co.*, 103 U. S. 651, 658; *Thomas* v. *R. R. Co.*, 109 U. S. 522; *Burns* v. *Cooper*, 140 Fed. 273, 277; *Mastin* v. *Noble*, 157 Fed. 506, 509; *New York Central & H. R. R. R.* v. *Price*, 159 Fed. 330, and *Lane & Co.* v. *Maple Cotton Mill*, 232 Fed. 421, 423.

Dunn and Gillam did not retain their interest in the lease which they had fraudulently acquired. They transferred it, together with the secret interest of Thomas, the guardian in the lease, to the defendant the Bull Head Oil Company in exchange for stock in that corporation. They then acquired by purchase from Thomas, for the sum of $3,500 and an automobile, his interest in the stock of the corporation. Some of the stock which they acquired by this transaction was turned over to their wives who, the court found, took as donees, and some of it was retained and is now held by appellees, and some of it has been transferred by them to innocent purchasers for value. In such a situation, equity adopts the salutary rule that he who fraudulently traffics with a recreant fiduciary shall take nothing by his fraud. The ward or the beneficiary of a trust may, at his option, follow the trust *res* fraudulently diverted until it reaches the hands of an innocent purchaser for value, or he may, at his option, claim the proceeds of the sale or other disposition of the trust *res* in the hands of him who fraudulently acquired it of the fiduciary.

The legal principles governing the right to follow trust funds diverted in breach of the trust were succinctly and accurately stated by Turner, L. J., in *Pennell* v. *Deffell*, 4 DeGex, M. & G. 372, 388, as follows:

"It is an undoubted principle of this court that as between a *cestui qui trust* and trustee and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruits of such property, whether it is in its original or its altered state, continues to be subject to or affected by the trust."

To the same effect are *Oliver et al.* v. *Piatt*, 3 How. 333, 401; *Lane* v. *Dighton*, Amb. 409; *Ex parte* v. *Dumars*, Atkyns, 232, 233; *Taylor* v. *Plummer*, 3 Maule & Selwyn,

562, 571; *Cobb* v. *Knight,* 74 Me. 253; *People* v. *California Safe Deposit & Trust Co.,* 175 Cal. 756; *Hubbard* v. *Burrell,* 41 Wis. 365.

The rule is the same as against a fraudulent vendee who has exchanged the property purchased for other property. *American Sugar Refining Co.* v. *Fancher,* 145 N. Y. 552.

The rule is the same with respect to the proceeds of property tortiously misappropriated and found in the hands of the tort feasor or his transferee with notice. *Newton* v. *Porter,* 69 N. Y. 133.

Dunn and Gillam, when they fraudulently acquired the Thomas lease by the corrupt action of the guardian, which action they actively induced, became trustees *ex maleficio* of the lease, and as such trustees they became equitably bound to hold the lease for the benefit of the ward or, in the event of a sale or other disposition of it, to hold its proceeds upon a like obligation. Any other rule would enable the fraudulent recipient of trust property, acquired through a breach of trust, to render himself immune to the remedial action of equity by the simple expedient of transferring the trust *res* thus acquired to an innocent purchaser for value, or otherwise placing it beyond the reach of the defrauded beneficiary of the trust. Nor are they in any better situation with respect to the stock which they acquired by purchase from Thomas with full knowledge that it was a part of the proceeds of the lease fraudulently acquired from the guardian and by them fraudulently transferred to the Oil Company. Not being innocent purchasers, they took it impressed with the trust to which the lease itself was subject. *Newton* v. *Porter, supra.*

The plaintiff's bill was framed in conformity to the rule as we have stated it. It prayed cancellation of the lease in the hands of the Bull Head Oil Company, the transferee of Dunn and Gillam; "but if for any reason the

Court shall hold " that the lease could not be cancelled, then it prayed that the stockholders be adjudged to hold the stock in trust for the plaintiff. The District Court having decreed that the leasehold itself could not be followed into the hands of the Bull Head Oil Company, the plaintiff was not barred from claiming the proceeds of the lease in the form of stock or money in the hands of those stockholders who were not innocent purchasers for value, and the pleadings were appropriately framed to that end. Suit to establish an equitable claim to specific property does not bar a recovery of the proceeds of that property if it develops in the course of the trial that the defendant has conveyed it away in violation of his equitable obligation to the plaintiff. *Taylor* v. *Kelly,* 3 Jones, Eq. 240; *Haughwout* v. *Murphy,* 22 N. J. Eq. 531–547; *Valentine* v. *Richardt,* 126 N. Y. 273; *Sugg* v. *Stowe,* 5 Jones Eq. 126; *Siter's Appeal,* 26 Pa. 178; *Frick's Appeal,* 101 Pa. 485; *Bartz* v. *Paff,* 95 Wis. 95. See also *Jervis* v. *Smith,* 1 Hoffman's Chancery Rep. 470; *Daniel's* v. *Davison,* 16 Vesey 249; and 1 Sugden on Vendors, 277.

In *Valentine* v. *Richardt, supra,* suit was brought in equity to cancel a conveyance of real estate for fraud. The alleged fraudulent grantee, and his grantee and a subsequent mortgagee, were made parties defendant, and the relief demanded was that the two conveyances and the mortgage be declared void and that they be surrendered up and cancelled, and for such further and other relief as might be just. On the trial the court found that the first conveyance was procured by fraud, but that the second conveyance and the mortgage were taken in good faith for value, and the complaint was dismissed as to them. It was held that the first grantee was a trustee of the property *ex maleficio;* that the bill might be retained against the first grantee and that the plaintiff might, in equity, secure a money judgment for the value of the land, *not as damages,* but as a substitute for the land it-

self, and that, under the frame of the bill and prayer, the court had power to render any judgment consistent with the facts alleged and proved; a principle of decision which we think is exactly applicable to the present case. See also *Mooney* v. *Byrne;* 163 N. Y. 86.

The compromise agreement entered into by plaintiff with defendants other than Dunn and Gillam was not technically a confirmation of the lease. It was both in form and in substance only an abandonment of an appeal from a decree of the court, adjudging an indefeasible title to the lease to be in the defendant corporation. The practical effect was to enable the other stockholders, at a price, to lessen the danger of being involved in the fraud by their probable guilty knowledge of it. But even if it were deemed to be a confirmation of the lease, such a confirmation is not inconsistent with a recovery of the proceeds of the lease from Dunn and Gillam and those claiming under them, nor, as has been pointed out, does it bar a recovery of the proceeds. Indeed, a recovery of the proceeds of the assignment of the lease by Dunn and Gillam could be predicated only on a confirmation of the transfer which would bar a recovery of the leasehold itself. *Bonner* v. *Holland,* 68 Ga. 718; *Cavieux* v. *Sears,* 258 Ill. 221; *Beltencourt* v. *Beltencourt,* 70 Ore. 384, 396.

Nor do we find it necessary to consider the question whether Eaves, the curator, or Thomas, the guardian, properly represented the minor, or whether either of them possessed exclusively the power to dispose of the property of the minor, or to determine the precise legal effect of the addition of Eaves' signature to the Thomas lease. Thomas, under whom Dunn and Gillam claim, assumed to act as guardian in the disposition of his ward's property. Dunn and Gillam dealt with him in that capacity. On common law principles they cannot deny the legal capacity in which their lessor purported to act in executing the lease under which they claim. *Clary* v. *Ferguson,* 8

Porter 501; *Pouder* v. *Catterson*, 127 Ind. 434; *Wolf* v. *Holten*, 92 Mich. 136; 104 Mich. 108; *Parker* v. *Raymond*, 14 Mo. 535; *Steel* v. *Gilmour*, 77 App. Div. (N. Y.) 199, 203; *Steuber* v. *Huber*, 107 App. Div. (N. Y.) 599; *Shell* v. *West*, 130 N. C. 171; *Caldwell* v. *Harris*, 4 Humphrey 24; Tiffany Landlord & Tenant, § 78 h & j. This is the rule adopted by the statute of Oklahoma. See § 5247 Compiled Statutes of Oklahoma, 1921; *Avery* v. *VanVoorhis*, 42 Okla. 232, 241. In a suit founded upon the very existence of the lease and praying relief from its execution and legal operation because procured by the fraud of the lessees, the lessees cannot claim under the lease, hold the benefits derived from it, and, at the same time deny the power and authority of the lessor to execute it.

We can perceive no reason why a doubtful or uncertain claim of Dunn and Gillam to the leasehold, sufficient nevertheless to constitute the consideration for the compromise contract with Mullen (*Blount* v. *Wheeler*, 199 Mass. 330; *Zoebisch* v. *VonMinden*, 120 N. Y. 406; *Dredging Co.* v. *Hess*, 71 N. J. L. 327) could not become the subject matter of a trust arising *ex maleficio* from the fraud of Dunn and Gillam and, upon principles already referred to, it follows that if Dunn and Gillam could not resist a bill to compel the cancellation of the lease, they cannot now resist the prayer that they account for the proceeds of the lease acquired by their sale of it and which are the direct fruits of their fraud.

A period of about six years elapsed between the giving of the Thomas lease and the filing of the bill. The defendants neither pleaded nor have they urged laches as a defense; nor do we find in the record any adequate basis for denying relief on that ground. One who claims the benefit derived from a breach of trust in which he actively participates and who shows no prejudice resulting from the delay in bringing suit to compel him to account

cannot complain of laches. See *Insurance Company* v. *Eldridge,* 102 U. S. 545, 548.

We hold that Dunn and Gillam were constructive trustees of whatever interest they acquired in the Thomas lease and of the proceeds derived from the transfer thereof to the Bull Head Oil Company, whatever its form, whether stock or money, and that they and all defendants claiming under them, other than innocent purchasers for value, may in equity be compelled to account to the plaintiff for such proceeds, for the benefit of the minor.

The decree of the Circuit Court of Appeals, with respect only to the defendants T. H. Dunn, N. E. Dunn, J. Robert Gillam and Mrs. J. Robert Gillam, is reversed and the cause remanded to the District Court for further proceedings in accordance with this opinion; as to the other defendants the appeal was barred by the agreement entered into by the appellant with them and as to them the decree of the Circuit Court of Appeals is affirmed.

*So ordered.*

*Reversed,* in part; *affirmed,* in part.