SIBLEY *v.* CRAWFORD COTTON MILLS CO. *et al.*

No. 9851. JUNE 15, 1934. REHEARING DENIED JULY 12, 1934.

*Hamilton McWhorter,* for plaintiff.
*Niles, Morrow, Barton & Yost* and *J. D. Bradwell,* for defendants.

GILBERT, J. Crawford Cotton Mills had outstanding bonds and stocks, and also owed debts evidenced by notes indorsed by the officers personally. Maryland Trust Company was trustee for the bond issue. Part of the bonds were in default, and the Trust Company was threatening foreclosure. Sibley was a stockholder, but held no bonds. At a meeting of the stockholders, held on December 28, 1927, the following plan of reorganization was submitted and adopted: The Mills was to amend its charter and issue $125,000 of preferred stock. This stock was to be bought for cash at par by the old stockholders, who were to surrender their

old stock and receive the new preferred and a bonus of non-par common stock. The $125,000 was to be used to retire the bonds, and the overplus was to be invested in machinery. Nothing was said about using this overplus to pay the notes indorsed by the officers, nor was anything said about forming a new corporation. Sibley agreed to the plan. A few weeks later he was notified that the charter had been amended, and accordingly surrendered his 40 shares of old stock, paid in $4000, and received 40 shares of the new preferred and his bonus in common stock. He "did not consent and would never have consented to buy any preferred stock with the bond issue outstanding and the company in its then condition." He supposed the money had been so used and the plan agreed to carried out, until January, 1931. He then saw a statement of the company which showed that the original plan had never been completed, that only $29,800 of new preferred stock had been issued, and that $80,000 of the bonds were still outstanding. He made complaint to the corporation, and was told that many stockholders had failed to take their quota of new preferred stock, but that the plan would be carried out, and that if the old stockholders did not complete it the preferred stock would be sold elsewhere. Sibley again remained quiet for about sixteen months, being a part of the time away from Georgia. In May, 1932, he learned that the Trust Company had foreclosed the bond mortgage and sold the property under power to one Eager, who in turn had conveyed it to a new corporation, the Crawford Cotton Mills Co. All the bonds and stock of the old corporation had been wiped out, and the new preferred which Sibley had received when he paid his $4000 was worthless. The new corporation had been organized by the bondholders of the old corporation, and the stock of the new company had been prorated among them. Sibley made demand on the old corporation for a return of his $4000, and tendered his preferred and non-par common, but was told that the old corporation had no money, its plant was gone, and all its assets had been exhausted by repaying the money which had been borrowed on the indorsement of the officers. The statement was also made that the bonds which had been taken up with his $4000 had been destroyed.

Sibley sued the old corporation, the Trust Company, and the new corporation. He asserted a right of subrogation on the ground that $4000 of bonds had been retired with his money. He prayed

also for the declaration of a trust in the corporate property to the extent of four eighty-fourths. The petition was dismissed as to the Trust Company and the new Crawford Cotton Mills Company, on the specific ground that the petition failed to set out a cause of action. The judge expressly refused to pass upon any other ground of the demurrer. Our decision is restricted to the judgment rendered and the assignment of error thereon.

The court erred in dismissing the petition on the ground that it failed to set out a cause of action. According to the allegations, Sibley entered into a definite agreement, paid to the old Crawford Cotton Mills $4000, and received shares in the old company on the basis of the contract made. This was done on the express condition that the contract had been or would be executed. He would not have performed his part of the contract without reliance upon the Crawford Cotton Mills to fully comply with the contract. A full compliance with the contract required the subscription for at least enough of new shares to acquire enough cash to retire all of the outstanding bonds, not a portion of the bonds. So long as a portion of the bonds were outstanding, the investment of new money for new shares could not be safe; at any time the Trust Company could foreclose and sell out the property of the Cotton Mills. That is exactly what occurred. There was a breach of the contract, a breach of trust reposed by Sibley in the officials of the Mills. The entire outstanding bonds were not retired. The money of Sibley was used to acquire $4000 out of the $84,000 of bonds. This was not Sibley's contract, and it was not done with his knowledge or consent. He was not bound thereby. Not having agreed to the purchase, with his money, of such bonds, the cancellation or destruction was not done by his consent. The result as to Sibley is the same as if the Mills still held the bonds, pending Sibley's acceptance of them, in lieu of his formal agreement. Maryland Trust Company represented the bondholders, including the bonds purchased with Sibley's money. Eager represented the bondholders, including Sibley. Therefore no question of innocent purchasers is involved. Sibley elects to accept the equitable ownership of the $4000 of bonds, and to demand his proportionate share in the ownership of the new Crawford Cotton Mills Company along with others who owned bonds. For this purpose the petition set out an equitable cause of action for the issue to him by that company of

such shares, or for the payment to him of the proportionate value thereof. *Judgment reversed. All the Justices concur.*

ON MOTION FOR REHEARING.

Crawford Cotton Mills Company and Maryland Trust Company, the defendants in error, move for a rehearing, objecting specifically to the statement made in the opinion that "All parties acted with notice. Therefore no question of innocent purchasers is involved." It is insisted that the plaintiff has not made in his petition or amendment any contention that these defendants acted with notice, and that the defendant Crawford Cotton Mills Company did not come into existence until 1932, whereas the transactions complained of by Sibley occurred in 1928 and 1929; and therefore that corporation could have had no notice of them; further, that this court has confused the two corporations, Crawford Cotton Mills and Crawford Cotton Mills Company; also that there is nothing in the contentions of the plaintiff to intimate that these defendants had anything to do with the transactions between plaintiff and Crawford Cotton Mills.

The statement as to notice, quoted above from the opinion, may have been inadvertently made, but the statement is not of controlling importance here. It was not the intention of this court to base its conclusion on that point. We are of the opinion that the presence or absence of notice cuts little or no figure in the case. The words, "All parties acted with notice," are stricken. Whether all the allegations of the petition and the amendment on the subject, taken together, imply such knowledge to the organizers of the new corporation as would carry to that corporation notice of what had transpired prior to its formation need not be decided. In view of what is said in the motion for rehearing the following should perhaps be added to the opinion:

The petition in paragraph 10 alleged that Eager, the purchaser at the foreclosure sale, did not pay the $20,000 bid, "or any money, and did not purchase or intend to purchase said property for himself, but was acting for and in behalf of the bondholders secured by said bond mortgage, and that the trustee thus well understood and deeded him the property upon the trust and confidence that he would hold it for the benefit of all bondholders." Sibley paid his $4000 as his contribution towards a single specific object: the retirement of all the bonds. No one had the right to use his money for any-

thing else. When it was used, in violation of his agreement, to purchase four of the bonds, these bonds became in equity Sibley's property. It is alleged in paragraph 17(f) of the amendment that these bonds were surrendered to Maryland Trust Company, and by it destroyed. There is nothing whatever to indicate any right of destruction. We may safely presume that the trust company had to act for *all* the bondholders in everything it did. If there were any provisions in the trust deed to the contrary, that would be matter of defense which is not before us on this demurrer. The unauthorized destruction of the bonds of which Sibley was the equitable owner could not affect Sibley's rights. The actual bond is no more than evidence of the interest its owner has in the mortgage. Destruction of the paper does not destroy the interest. Had the foreclosure sale occurred bona fide in due course, had Eager been the best bidder and actually paid his $20,000 to the trust company on receipt of his deed, an entirely different situation would have resulted. Eager then would have owned the property as an innocent purchaser, and could have deeded it to any one to whom he might wish to sell it, and all equities so far as the property was concerned would have been cut off. It would then have been the duty of the trust company, after paying expenses, to distribute the $20,000 among all the bondholders. The transaction would have retired all the bonds, and Sibley would have got his share of the $20,000. Or, he could have refused thus to ratify the unauthorized use of his money, and could have brought suit against those who had breached his contract of December 28, 1927.

But the allegations of the petition and amendment show that the sale to Eager was not a real sale to outside parties. The $20,000 bid was never paid. Everything that occurred was done to forward the plan which had been formulated to get the title to the property into a new corporation of which the bondholders of the old corporation were to be the stockholders. By reason of the fact that Sibley had paid in his $4000, the old bondholders, who are now stockholders of the new corporation, are the owners, for all practical purposes, through their stockholdings, of 80/80 of the original plant; and Sibley, up to the present time, is left with an empty bag. The equity and good conscience of the case demands, if on the final trial the allegations of the petition and amendment be proved, that Sibley should have a decree that the ownership of

the present stockholders is only 80/84 and that he is the owner of the remaining 4/84.

It is, of course, true that the turning in by their owners of the bonds which were undestroyed and the receipt of the stock in the new corporation was a transaction founded on a valuable consideration; but these bondholders were bound to know that the trust company could not do anything that was not for the benefit of *all* the bondholders; they were bound to inquire into the bona fides of the sale to Eager; they were obliged to know that it had not been made in due course, because they were not tendered their portions of the $20,000. Had the sale been legal and a valid exercise of the power in the trust deed, it would have retired all the bonds, and the claims of the bondholders would have been transferred to the fund the sale produced. Yet after the sale those bondholders used their bonds to pay for the stock in the new company. See paragraph 11 of the petition, paragraph 17(j) of the amendment.

The situation here presented is not in the least like those cases where an attempt is made to have a secret equity declared and a trust established in certain property and the attempt is defeated by a transaction which brings in an outsider who has parted with his money and taken his deed without any notice of the secret equity. The principle involved here is a very ancient one. It has been well stated in Cook v. Tullis, 18 Wall. 332 (21 L. ed. 933). "It is the rule of equity jurisprudence, perfectly well settled and of universal application, that where property held on any trust to keep, use, or invest in a particular way is misapplied by the trustee and converted into different property, or is sold and the proceeds thus invested, the property may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or cestui que trust." And in U. S. v. Dunn, 268 U. S. 121 (45 Sup. Ct. 451): "It is an undoubted principle of this court that as between a cestui que trust and trustee and all parties claiming under the trustee otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust however much it may be changed or altered in its nature or character, and all the fruits of such property whether it is in its original or its altered state, continues to be subject to or affected by the trust."

In view of the earnestness with which the motion for rehearing is presented, we have thought it well to make the foregoing additions to the former opinion.                    *Rehearing denied.*